IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

"IN ADMIRALTY"

ENDURANCE EXPLORATION GROUP, INC.,

        Plaintiff,

vs.                                                                                    CASE NO.

THE UNKNOWN, ABANDONED, SUNKEN
19TH CENTURY PADDLE WHEEL STEAMER,
her apparel, tackle and appurtenances, and her
Cargo located within center point coordinates (to
be provided to the Court under seal), *in rem*,

        Defendants.
_____/

**VERIFIED COMPLAINT IN ADMIRALTY IN REM**

Plaintiff, Endurance Exploration Group, Inc., asserts the following complaint *in rem* against the Defendant Unknown, Abandoned, Sunken 19th Century Paddle Wheel Steamer, its apparel, tackle, appurtenances, and cargo, located within the coordinates (to be provided to the Court under seal). The verification of the facts alleged herein is appended hereto.

**Parties**

1. Endurance Exploration Group, Inc., a Nevada corporation authorized to do business in Florida, with its principal place of business at 15500 Roosevelt Boulevard - Suite 303, Clearwater, Florida ("Endurance"), is engaged in the business of deep ocean exploration and the recovery of shipwrecks and their cargo.

2. The Defendants are the Unknown, Abandoned, Sunken 19th Century Paddle Wheel Steamer, her apparel, tackle, appurtenances (the "Vessel"), and her Cargo. The Vessel is believed to be the remains of THE CONNAUGHT a paddle-wheel steamship that sank on October 8,

1860. The identity of the Defendant Vessel may be proved upon further exploration and recovery and property salvaged. Should the identity of the vessel be confirmed, Plaintiff will promptly file with the Court a notice of amendment to the caption of this action to accurately reflect the identity Defendant Vessel.

3. The Defendants are lying at a depth of over 500 feet, beyond the territorial waters of any sovereign nation, roughly 150 miles East of Boston, Massachusetts.

4. Upon information and belief, at this time no extant entity or person presently claims any ownership interest in the Defendants Vessel or Cargo. Evidence at the site indicates no efforts by any previous owner to salvage the shipwreck or her cargo and that the vessel and cargo have been abandoned for more than 150 years. The value of the Defendants Vessel and Cargo cannot be estimated at this time.

**Jurisdiction and Venue**

5. This is an admiralty case stating a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Supplemental Admiralty Rules C and D as hereinafter more fully appears. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1333. In addition, the Court has *in personam* jurisdiction over the Plaintiff and constructive *quasi in rem* jurisdiction over the Defendants Vessel and Cargo.

6. Venue is proper in this United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391, and Local Rule 7.03 of the Middle District since Plaintiff's principal place of business is located in Clearwater, Pinellas County Florida, and all of the property, artifacts and objects that are recovered from and about the Defendant Vessel will be brought and maintained in the District for safekeeping and appropriate conservation and preservation efforts.

**Predicate Facts**

7. Plaintiff first located the site of the Defendants in September 2013 using sophisticated sonar equipment. At the time of filing of this complaint, Plaintiff has had recently completed surveying the wreck site, taking video and photographs of the site, using a surface-controlled remotely operated vehicle ("ROV"). On September 28, 2014, Plaintiff, using the ROV aboard the recovery vessel, SOPHIE E, successfully salvaged some material from the ship's hull which it now seeks to arrest under this admiralty *in rem* complaint: remains of the ship's hull made of iron.

8. The Defendants rests on the sea floor at a depth of over 500 feet, beyond the territorial waters of any sovereign nation. The Defendants lie in an area of less than 5 acres referred to herein as the Salvage Area and, for purposes of security and confidentiality. With the Court's approval, the Salvage Area location shall be provided to the Court under seal.

9. Upon information and belief, no other salvor is currently working on this site. Plaintiff does not have any specific knowledge of any archaeological or salvage operations other than those conducted by the Plaintiff within the Salvage Area or in the general area, and to the best of Plaintiff's knowledge, no salvor has sought to protect an interest in the vessel through an arrest. Since Plaintiff has located the wreck site, it has maintained actual, continuous, and exclusive possession or constructive occupancy of the site to the extent possible.

10. Plaintiff is the only party that is currently engaged in extensive exploration and survey operations in the Salvage Area. Using appropriate archaeological protocols, Plaintiff has voluntarily and successfully obtained video and photographic images of the Defendants and has begun archaeological documentation of the site. Plaintiff is using an excavation plan and conservation process to ensure that its recovery operations are consistent with rigorous

archaeological protocol, and the recovery operations using a Remote Operating Vehicle ("ROV") will proceed consistent with these protocols.

11. In conjunction with the filing of this action, Plaintiff will request the United States Marshal be directed to arrest the salvaged material and for Plaintiff to then be appointed substitute custodian for recovery, conservation, restoration and safekeeping of all recovered salvage. When circumstances allow, Plaintiffs will promptly return to the Salvage Area for the further recoveries. Any further property and objects recovered from the Salvage Area by Plaintiff will be recovered as Substitute Custodian under the jurisdiction of this Court and will be within the actual or constructive possession of the Court's duly-appointed Substitute Custodian during the pendency of this action.

12. Plaintiff, its agents and associates, have invested substantial time, money and effort in locating, surveying and photographing the Defendant Vessel, in planning the archaeological recovery of property from the Defendant Vessel, its hull material, and he Defendant Cargo. Plaintiff's survey and recovery operation has been, and will continue to be, conducted in accordance with all appropriate archaeological protocols.

13. Plaintiff, its agents and associates, are actively, voluntarily and successfully engaged in the process of reducing certain artifacts from and about the Defendant vessel to the Plaintiff's exclusive custody, possession, dominion and control, as circumstances permit, and Plaintiff has the present ability and intention to continue to do so during the pendency of this action.

## COUNT I

### SALVAGE AWARD CLAIM
### PURSUANT TO THE LAW OF SALVAGE

14. Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations set forth above in paragraphs 1 through 13.

15. This count arises under Supplemental Admiralty Rule C and the general maritime law as salvage services constitute a preferred maritime lien.

16. The Defendants Vessel and Cargo are subject to maritime peril. The Vessel is in an utterly helpless condition and the Cargo lost for more than 150 years from which neither could be rescued without the voluntary and successful services of Plaintiff, its agents and associates.

17. Plaintiff is under no legal obligation or official duty to render salvage services to the Defendants Vessel and Cargo.

18. Plaintiff's voluntary services have been and will continue to be successful in rescuing or helping to rescue the Defendants Vessel and the Cargo in order to investigate and research the Salvage Area and to return the recovered portions thereof to the stream of commerce from which they were lost.

19. Plaintiff, by virtue of services performed, the private risk capital expended, and the time spent and danger incurred in finding and recovering artifacts from the Defendant vessel as well as the cargo she carried, is entitled to a liberal salvage award for such services.

## COUNT II

### POSSESSORY AND OWNERSHIP CLAIM
### PURSUANT TO THE LAW OF FINDS

20. Plaintiff incorporates by reference, as though fully set forth herein, the allegations, set forth above in paragraphs 1 through 16.

21. This count arises under Supplemental Admiralty Rule D and general maritime law.

22. The Plaintiff is, by virtue of its exclusive possession, dominion and control of the Defendants Vessel and Cargo, has taken such actions as are necessary to constitute continued possession, dominion and control of the abandoned shipwreck site and intends to continue such.

23. While Plaintiff believes the sunken vessel may be the P/S CONNAUGHT which sank in October 1860, it has been abandoned as there is no presently known extant owner of the Vessel nor the Cargo that sank with her.

24. Should no claimant appear and successfully prosecute its claim, Plaintiff will be entitled to an adjudication of title and ownership in the Defendants Vessel or Cargo, or both, and the right to recover the Defendants Vessel and Cargo that sunk with her without the interference of any other salvor, claimant, agency, department or instrumentality of any government, domestic or foreign.

**Prayer for Relief**

WHEREFORE, Plaintiff prays that the Court grants relief to Plaintiff as follows:

(a) that should any claimant appear and be adjudged the owner of the abandoned vessel, her apparel, tackle, appurtenances, or her cargo or any items recovered from her, that Plaintiff be awarded a liberal salvage award, with the amount and/or composition of such award as may be determined by this Court pursuant to the law of salvage;

(b) that process *in rem* and *quasi in rem* and a Warrant of Arrest issue in due form, by and in accordance with the practice of this Honorable Court in causes of admiralty and maritime jurisdiction against the aforesaid Defendant Abandoned Sunken Vessel, her apparel, tackle and appurtenance, and her cargo and any other artifacts recovered from the Defendant Abandoned Shipwrecked Vessel, with notice to be posted on the shipwreck and given otherwise as the Court orders to all persons claiming an interest in Plaintiff's ongoing recovery operations to appear and answer this complaint and to show cause as to why the

artifacts recovered from the Defendants vessel and her cargo by Plaintiff and its associates should not be (i) delivered to Plaintiff as the sole and exclusive owner of said property; or, (ii) alternatively, sold or appropriately transferred in satisfaction of any judgment in favor of Plaintiff for a salvage award; and

(c) that Plaintiff be adjudged as having the sole and exclusive right to conduct recovery operations in the Salvage Area and preserve any property recovered from the Salvage Area as either salvor-in-possession or finder-in-possession, without the interference of other third parties;

(d) that, in the alternative, Plaintiff be put into possession of the Defendants Vessel, her tackle, armament, apparel and appurtenances, and Cargo, wherever she may be found, and that title as the sole and exclusive owner of Defendants Vessel and her Cargo be decreed and confirmed in Plaintiff and against all claimants and all the world and that all other persons, firms, and corporations and governmental agencies, domestic or foreign, be enjoined from interfering with the Plaintiff's title, exclusive possession and property rights therein; and,

(e) that Plaintiff have such other relief as is just and proper.

Respectfully submitted,

/s/ Marlow V. White
Marlow V. White
Florida Bar Member 275417
LEWIS & WHITE, P.L.C.
Post Office Box 1050
Tallahassee, Florida 32302
Vox: (850) 425-5000
Fax: (850) 425-5004
lawlaw@polaris.net
ATTORNEYS FOR PLAINTIFF